```
                   IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF TEXAS
                            FORT WORTH DIVISION

In Re:                            )   Case No. 23-90001-elm-11
                                  )
TUESDAY MORNING                   )   Fort Worth, Texas
CORPORATION, et al.,              )   April 25, 2023
                                  )   9:00 a.m. Docket
        Debtors.                  )
                                  )   INVICTUS GLOBAL MANAGEMENT,
                                  )   LLC'S PRELIMINARY RESPONSE TO
                                  )   DEBTORS' EMERGENCY MOTION FOR
                                  )   ENTRY OF AN ORDER (936)
                                  )   (Continued from 04/24/2023)
_____)
```

                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE EDWARD L. MORRIS,
                  UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

| | |
|---|---|
| For the Debtors: | Kevin Lippman<br>MUNSCH HARDT KOPF & HARR, P.C.<br>3800 Lincoln Plaza<br>500 North Akard Street<br>Dallas, TX  75201-6659<br>(214) 855-7565 |
| For Invictus Global<br>Management: | Jeff Prostok<br>FORSHEY PROSTOK, LLP<br>777 Main Street, Suite 1550<br>Fort Worth, TX  76102<br>(817) 877-8855 |
| For the Debtors:<br>(Special Counsel)<br>(WebEx) | Robin Phelan<br>PHELAN LAW<br>4214 Woodfin Drive<br>Dallas, TX  75220<br>(214) 704-0222 |
| For the Term Loan Lenders:<br>(WebEx) | Kenneth Stohner<br>JACKSON WALKER<br>2323 Ross Avenue, Suite 600<br>Dallas, TX  75201<br>(214) 953-6130 |

```
 1  APPEARANCES, cont'd.:

 2  For Invictus Global           Justin M. Ellis
    Management:                   MOLOLAMKEN, LLP
 3  (WebEx)                       430 Park Avenue
                                  New York, NY  10022
 4                                (21) 607-8160

 5  For Wells Fargo Bank,         Jonathan Marshall
    N.A.:                         CHOATE, HALL & STEWART, LLP
 6  (WebEx)                       Two International Place
                                  Boston, MA  02110
 7                                (617) 248-5259

 8  For the Official Committee    Trey Andrew Monsour
    of Unsecured Creditors:       FOX ROTHSCHILD, LLP
 9  (WebEx)                       Saint Ann Court
                                  2501 N. Harwood Street, Suite 1800
10                                Dallas, TX  75201
                                  (713) 927-7469
11
    For the Official Committee    Michael Kaplan
12  of Unsecured Creditors:       Brent Weisenberg
    (WebEx)                       LOWENSTEIN SANDLER, LLP
13                                One Lowenstein Drive
                                  Roseland, NJ  07068
14                                (973) 597-2500

15  For 1903 Partners, LLC:       Chad B. Simon
    (WebEx)                       OTTERBOURG, P.C.
16                                230 Park Avenue
                                  New York, NY  10169
17                                (212) 661-9100

18  For Invictus Global           Doug Mintz
    Management:                   Ned Schodek
19  (WebEx)                       Doug Koff
                                  Elizabeth Curran
20                                SCHULTE ROTH & ZABEL, LLP
                                  919 Third Avenue
21                                New York, NY  10022
                                  (212) 756-2000
22
    For TASCR Ventures CA,        Harley E. Riedel, II
23  LLC, TM21, LLC, et al:        STICHTER, RIEDEL, BLAIN & POSTLER,
    (WebEx)                          P.A.
24                                110 E. Madison Street, #200
                                  Tampa, FL  33602
25                                (813) 229-0144
```

```
 1   APPEARANCES, cont'd.:

 2   For Ayon Capital, LLC,      Kenneth G. M. Mather
     TASCR Ventures, CA, LLC,    GUNSTER, YOAKLEY & STEWART, P.A.
 3   et al.:                     401 East Jackson Street,
     (WebEx)                       Suite 1500
 4                               Tampa, FL  33602
                                 (813) 228-9080
 5
     For the U.S. Trustee:       Erin Schmidt
 6   (WebEx)                     OFFICE OF THE UNITED STATES
                                   TRUSTEE
 7                               1100 Commerce Street, Room 976
                                 Dallas, TX  75202
 8                               (214) 767-8967

 9   For Brixmor Operating       Michael P. Cooley
     Partnership, et al.,        REED SMITH, LLP
10   Landlords:                  2850 N. Harwood Street, Suite 1500
     (WebEx)                     Dallas, TX, 75201
11                               (469) 680-4213

12   Recorded by:                Shelley Warren
                                 UNITED STATES BANKRUPTCY COURT
13                               501 W. 10th Street
                                 Fort Worth, TX  76102
14                               (817) 333-6005

15   Transcribed by:             Kathy Rehling
                                 311 Paradise Cove
16                               Shady Shores, TX  76208
                                 (972) 786-3063
17

18

19

20

21

22

23

24
           Proceedings recorded by electronic sound recording;
25            transcript produced by transcription service.
```

```
 1            FORT WORTH, TEXAS - APRIL 25, 2023 - 9:01 A.M.
 2            THE COURT:  Please be seated.  All right.  Good
 3   morning, everybody.  We're on the April 25, 2023 9:00 a.m.
 4   docket.  We have the Tuesday Morning Corporation and
 5   affiliated cases, jointly administered under Case 23-90001.
 6   Let me pull up my screen here real quick.  All right.  And
 7   while that's coming up, let me tell you all who I have as far
 8   as electronic appearances today, in no particular order.
 9        We have Mr. Mintz, Mr. Schodek, Mr. Koff, and Ms. Curran
10   on behalf of Invictus Global Management.
11        We have Mr. Simon on behalf of the 1903 Parties.
12        We have Mr. Monsour and Mr. Kaplan on behalf of the
13   Official Unsecured Creditors' Committee.
14        We have Mr. Riedel and Mr. Mather on behalf of the TASCR
15   Parties.
16        And we have Ms. Schmidt on behalf of the United States
17   Trustee.
18        So let me go ahead and take additional appearances at this
19   time, starting with folks in the courtroom.
20            MR. PROSTOK:  Good morning, Your Honor.  Jeff
21   Prostok; Forshey Prostok; for Invictus.
22            THE COURT:  All right.  Mr. Prostok.
23            MR. LIPPMAN:  Good morning, Your Honor.  Kevin
24   Lippman with Munsch Hardt Kopf & Harr appearing on behalf of
25   the Debtors.
```

1     THE COURT: All right. Mr. Lippman.
2  And do we have folks on WebEx wishing to make a live
3  appearance? I see we have Mr. Phelan.
4     MR. PHELAN: Robin Phelan for the Debtors.
5     THE COURT: Okay. Mr. Stohner?
6     MR. STOHNER: Yes, Your Honor. Ken Stohner of
7  Jackson Walker on behalf of the Term Loan Lenders.
8     THE COURT: All right. I see Mr. Ellis.
9     MR. ELLIS: Good morning. Justin Ellis, MoloLamken,
10 for Invictus.
11    THE COURT: All right. Very good. And I see Mr.
12 Marshall.
13    MR. MARSHALL: Yes. Good morning, Your Honor.
14 Jonathan Marshall of Choate, Hall & Stewart on behalf of Wells
15 Fargo Bank as Prepetition ABL Agent.
16    THE COURT: Okay. Very good.
17  All right. Any other appearances on WebEx?
18  All right. Well, I see I've got Mr. Prostok and Mr.
19 Lippman up at the lectern here together, which bodes well, I'm
20 thinking, for today's proceedings. So let me turn it over to
21 you all. Hopefully you won't arm-wrestle to compete on who is
22 going to talk first. But tell me where we're at.
23    MR. LIPPMAN: Your Honor, I think we are in a good
24 position today. The parties used the time last night, and
25 more importantly, this morning, to come to an agreement to

1   announce to the Court on how to address the matter before the
2   Court. And if I may, I'll just briefly tell the Court what it
3   is.
4           THE COURT: Okay. Great.
5           MR. LIPPMAN: With respect to the borrowing request
6   that the Debtor had made in the approximate amount of $9.9
7   million -- it's what's reflected on our Debtor's Exhibit H --
8   the Debtors have agreed to pull out the request for
9   approximately $2.5 million. It's the occupancy cost amount.
10  What that will do is drop the request to $7,498,573.59.
11  Invictus has agreed to fund that tomorrow morning via wire.
12  The Debtors have agreed that those dollars that have -- are
13  being advanced under -- to the Debtors under this 1903 DIP
14  will be paid at closing, excluding any fees, costs, or
15  expenses, and as to that all rights are being reserved. But
16  the important thing is the dollars that are actually being
17  advanced or remain -- have -- previously advanced to the
18  extent there's a balance, all get paid at closing as a closing
19  expense.
20          THE COURT: Okay. Mr. Prostok?
21          MR. PROSTOK: Yes, Your Honor. And the other
22  condition that I think is agreed to is that there'll be no
23  objection to the immediate repayment by either the Debtor or
24  the Committee. That's an important point to Invictus, that at
25  the close that these dollars advanced will actually be repaid

1  and there won't be any type of arguments in that regard.  And
2  I think that's the deal.
3       Your Honor, we appreciate the Court's help in getting
4  there.  Your Honor's words were not lost on the parties.  And,
5  you know, we appreciate the Debtor and the Committee's
6  cooperation on this.  We think all parties really came
7  together.  I think it's a positive sign moving forward.  But
8  we want to thank the Court for helping us get there.
9            THE COURT:  Okay.  All right.  Let me just open the
10 floor.  Is there anybody else that wishes to be heard in
11 relation to today's announcement by the parties?
12      All right.  Then let me just make the comment --
13           MR. COOLEY:  Your Honor?
14           THE COURT:  Oh, go ahead.
15           MR. COOLEY:  Sorry, Your Honor.  This is Michael
16 Cooley from Reed Smith.  I represent various landlords in the
17 case, together with --
18           THE COURT:  And why don't you --
19           MR. COOLEY:   -- Ms. Heilman.
20           THE COURT:  Sure, sure.  Why don't you, because there
21 hasn't been a formal appearance, why don't you tell us who it
22 is that you're appearing on behalf of.
23           MR. COOLEY:  Yes, Your Honor.  This is Michael Cooley
24 from Reed Smith appearing for what I think the Court has
25 colloquially referred to as the Brixmor Landlords, which are

1  not all affiliated with Brixmor but that's the first name on
2  the list and sort of the list that the Court has colloquially
3  used in these proceedings.
4      And I just wanted to interject for a moment with a
5  question, which was if the parties could clarify what was
6  meant by occupancy costs that are being pulled out of the
7  budget.
8          THE COURT:  So let me just ask, were you here
9  yesterday?
10         MR. COOLEY:  Yes, Your Honor.
11         THE COURT:  Okay.  So we --
12         MR. COOLEY:  I was here for portions of the hearing
13 yesterday.
14         THE COURT:  So we obviously spent a fair amount of
15 time.  Frankly, I think we had we had testimony that went over
16 it a fair amount of time.  Is there something about the
17 testimony that you didn't understand?
18         MR. COOLEY:  No, Your Honor, but I wasn't here for
19 all of the hearing.  I caught portions of it yesterday, I
20 confess.
21         THE COURT:  All right.  Well, do you care to --
22         MR. LIPPMAN:  Can I give one clarification?
23         THE COURT:   -- address it?
24         MR. LIPPMAN:  I'll respond, Your Honor.
25     It's not being pulled out of the budget.  It's just being

```
 1  pulled out of the draw request.
 2           THE COURT:  Right.
 3           MR. COOLEY:  Understood.  Thank you.
 4           THE COURT:  So is there any other commentary you wish
 5  to provide?  I'm not requiring it, but --
 6           MR. LIPPMAN:  You know, the Debtors --
 7           MR. COOLEY:  No, Your Honor.
 8           THE COURT:  Okay.  All right.
 9           MR. PROSTOK:  Your Honor, the only other thing is I
10  think it might be helpful if the Committee could acknowledge
11  that they're not going to make an objection at the close with
12  respect to this draw.  I think that's the agreement, but I'd
13  like to hear that on the record, if possible.
14           THE COURT:  Understood.  Let me just kind of close
15  the loop on if there is anybody else wishing to be heard.  So
16  let me -- I see Mr. Stohner has got his hand raised.
17           MR. STOHNER:  Your Honor, I just wanted to be sure I
18  heard correctly.  The agreement, as I understand it, it's the
19  actual funds being advanced, the approximately $7.5 million,
20  that would be repaid at closing, and any request for fees or
21  other costs would be deferred subject to subsequent resolution
22  by agreement or by the Court.  Did I understand that
23  correctly?
24           MR. LIPPMAN:  Yes.
25           THE COURT:  Not to split hairs, but I'm just going to
```

1 step out a little bit for I think what I would hear from Mr.
2 Prostok, and certainly Mr. Mintz if he was here. I think that
3 the point is that, undisputedly, the amount that is actually
4 advanced will be repaid at closing. And then with respect to
5 anything else, it just doesn't deal with that at all, that
6 those issues will come up at the hearing however they come up
7 at the hearing, but it's the point of whatever is being
8 advanced under the current draw request will unquestionably in
9 fact be paid at closing, period, end of sentence.
10     MR. PROSTOK: Correct, Your Honor.
11     MR. LIPPMAN: Correct, Your Honor.
12     THE COURT: Does that help?
13     MR. STOHNER: That does clarify, Your Honor. Thank
14 you.
15     THE COURT: Okay.
16     MR. WEISENBERG: Your Honor, if I may. This is Brent
17 Weisenberg on behalf of the Official Committee.
18     You said what I couldn't have done as well as you did, and
19 so I thought I would take up the opportunity to take Mr.
20 Prostok's invitation to confirm the Committee's agreement,
21 which, again, is, as you accurately stated, the Committee will
22 not oppose the repayment of the actual dollars lent pursuant
23 to this draw, with all other rights reserved as to fees and
24 any other amounts due.
25     THE COURT: Does that accurately get you where you

1  need, Mr. Prostok?

2          MR. PROSTOK:  That's our understanding, Your Honor.

3          THE COURT:  Okay.  All right.  So Mr. Prostok has

4  confirmed that that's -- everybody is on the same page.

5      Any other comments or questions?

6      All right.  Then let me tell you all that I do appreciate

7  getting this sorted out.  I think it's very important for --

8  we're very close, it appears.  And of course, I'm not -- I'm

9  leaving for Thursday whatever is going to happen on Thursday,

10 and I'm not trying to tell people one way or the other what

11 I'm hoping to see on Thursday, because, frankly, I haven't

12 reviewed everything that's come in on that.  But I do think

13 that from the standpoint of just interim stability and

14 preserving value for all of the parties concerned, that this

15 was important.

16     So, putting aside all of the contentiousness that we had

17 leading up to yesterday and what have you, I very much

18 appreciate the parties and counsel working to just deal with

19 this.  Like I said, irrespective of the merits.  Whether it

20 conformed with the agreement or didn't conform with the

21 agreement or it fit the order or it didn't fit the order or

22 something's been violated or hasn't been violated, all those

23 things, I think it was really important from a practical

24 standpoint to just figure out, like I said, a path forward on

25 stability so that we can get to the sales process and see

1 where we're at at the point of the sales process, which is --
2 our hearing is, in fact, Thursday, --
3     MR. PROSTOK: Thursday.
4     THE COURT: -- correct?
5     MR. LIPPMAN: Correct, Your Honor.
6     THE COURT: All right. So, again, I appreciate you
7 all getting that done.
8     If I could just ask you all -- you may already be working
9 on it -- just maybe put together some sort of a simple order.
10 I don't care if it has some of the buzz words that's similar
11 to a settlement-type agreement where nobody's acknowledging
12 right or wrong or whatever. You know what I mean? But just
13 that the parties agree and stipulate to the following, to just
14 resolve the issue and avoid the dispute. Like I said, kind of
15 almost like settlement language. If you all want to put
16 something together on that front so that we can memorialize
17 what's been done, I would appreciate that.
18     MR. LIPPMAN: I'll be happy to do so, Your Honor.
19     THE COURT: And then I'll get that entered.
20     Just because you all are here and we have a number of
21 folks on the line -- and I certainly don't want to put
22 somebody in the position of stepping out prematurely if
23 they're not ready to -- but is there anything at all that --
24 any sense of how things are looking for Thursday in terms of
25 -- we're booked for the afternoon. Are things looking like we

1   might actually get there by the afternoon, or is that just a
2   question mark at this point?
3       What I'm trying to do is figure out from a staffing
4   standpoint if I need to be thinking about basically looking at
5   Friday as a possible overflow date.
6           MR. LIPPMAN:  Your Honor, we're going to have a lot
7   of objections filed, because a lot of people just had
8   questions of reservation of rights.  A lot of it is, we
9   believe, could probably fall into the category of getting the
10  language to address parties' concerns.
11      Without getting too far ahead or too detailed at this
12  time, there will be other issues the Court is going to have to
13  weigh.
14      We're hopeful we'll be able to finish Thursday evening.
15  It's important -- everything has been baked into this with the
16  contemplation of a Friday closing.  And so we will run into
17  some issues we'll have to address if we're not in a position
18  to close on Friday.
19          THE COURT:  All right.  And just give me a -- well,
20  let me just say, that was pretty generic, and I appreciate it.
21  It tells me a lot of what I need to know.  Again, not trying
22  to put people to the paces of disclosing things prematurely,
23  because certainly that's not my objective, but is there
24  anybody that wishes to respond at all to the report that Mr.
25  Lippman has provided?

1     MR. PROSTOK: Your Honor, --

2     MR. WEISENBERG: Your Honor, if I may. This is Brent
3  Weisenberg on behalf of the Committee again.

4     To my knowledge, there has been no objection to the sale
5  itself. Parties in interest have objected or expressed
6  concerns about seeing the relevant agreement or about
7  disposition of the proceeds, but again, as far as the
8  Committee is concerned, no party in interest is opposing the
9  actual sale to Hilco.

10    THE COURT: Got it. Okay. And let me just -- I know
11 there's been a number of stipulations on extending deadlines
12 and what have you that have come down the pike. And, quite
13 frankly, I didn't really pay attention to those, I just
14 figured you all are doing what you need to do, and I wanted to
15 help facilitate that.

16    But just for my own sanity, generally speaking, what does
17 the landscape look like in terms of these extended objection
18 deadlines? Is it Wednesday at 5:00? Is it Wednesday at 10:00
19 p.m.? I'm just trying to figure out, you know, --

20    MR. PROSTOK: We filed our response, Your Honor,
21 Sunday, which was our extended deadline.

22    MR. LIPPMAN: Yeah. Most of the extensions went
23 through yesterday, if I may recall. There might have been a
24 few that could have gone through today. Honestly, I haven't
25 been closely monitoring it. So that's why you're starting to

1  see reservation of rights and comments being filed, because
2  the deadlines for those existing stipulations have ran for
3  most of them.
4      I remain optimistic.  For most of those parties, I think
5  it's a language issue ultimately that it comes down to.
6          THE COURT:  Okay.  All right.  Well, that's helpful.
7  Again, just part of what I was asking, the reason I'm asking
8  is just trying to gauge from a stamina standpoint being
9  prepared to know how much I need to be ready to be reviewing
10 stuff at the last second.  So that's helpful.
11     Mr. Stohner?  Oh, there you go.  I know you had a hand
12 raised earlier.  It looks like maybe that was an old one and
13 it's just gone away.  Unless you had something.  Well, okay,
14 there's a new one.  All right.  Go ahead.  I think you might
15 be on mute.  So, we can see your lips moving but we can't hear
16 you.
17         MR. STOHNER:  I apologize, Your Honor.
18     In follow-up to Mr. Weisenberg's comment, it's my sense
19 that what has been filed today is there seems to be no
20 objection to the sale.  My sense, and I may be missing some
21 things that could come up, is whether there is any issue
22 regarding the holding of all proceeds.  Obviously, this new
23 funding has already been dealt with today, and that's
24 understandable.  But the only other issue, which I don't think
25 one is on the table, but is if there is any request that there

1 be any other distribution of proceeds now versus the Court
2 determining that with all parties reserving rights relative to
3 that. So I'd just make that point of clarification as a
4 follow-up to Mr. Weisenberg.
5     THE COURT: Okay. Well, you've triggered now a hand-
6 raise from Mr. Riedel, so let me hear from him as well.
7     MR. RIEDEL: Your Honor, I'll also follow up on Mr.
8 Weisenberg, but to a different point. One of our concerns is
9 we haven't seen the sale agreement and we haven't seen a
10 proposed order. So just in the interest of trying to move
11 things along, if we can see the actual agreement and any
12 proposed order in advance, that would be helpful and expedite
13 and I think streamline the hearing.
14     THE COURT: Perfect. Okay. I appreciate the
15 comment.
16     And not to put you on the hot seat here, Mr. Lippman, but
17 do you have a sense of when those might be filed so that it's
18 being pushed out to folks?
19     MR. LIPPMAN: I may get shot by my team for saying
20 this. Hopefully, the intent is today.
21     THE COURT: Okay.
22     MR. LIPPMAN: I know there were calls and exchanges
23 into late last night with Hilco trying to finalize the final
24 details. I'm not aware of anything that should delay it much
25 longer. But we understand the importance of getting there,

```
 1   and we're -- and it's our intent to get it on file as soon as
 2   we can.  Obviously, I may get shot from my team.
 3              THE COURT:  I mean, that's fair.
 4              MR. LIPPMAN:  If I'm not getting (garbled) to my
 5   skis, but we understand the importance.
 6              THE COURT:  Okay.  Yes.  And let me state the
 7   obvious, which I'm sure you would appreciate, too, which is if
 8   we have a situation where folks are having a little bit of a
 9   challenge finalizing Schedule 6.15 of the APA, let's not make
10   that be the hang-up, if we have to put a slip sheet in there
11   saying "Still being finalized" or something.  I think probably
12   it's more important to get the substance out to folks sooner
13   rather than later, even if there's a schedule here or there
14   that needs to be supplemented at the end of the day or
15   whatever, even if it's pretty last second.
16              MR. LIPPMAN:  Understood.  And just to make sure the
17   record is clear, the delay is not because of anyone not giving
18   attention, acting in bad faith, or there's a big issue that
19   I'm aware of.  It's just a lot of schedules, issues that have
20   to be finalized.  There's nothing that I can report to the
21   Court or even suggest to the Court is because parties have
22   been not giving it the due attention it needs.
23              THE COURT:  Okay.  All right.  Well, then I think
24   that will wrap things up for today.  I appreciate the report.
25   And like I said, that gives me a little bit of sense on timing
```

1  and what we're looking at so that we can make sure that we're
2  committing the appropriate level of resources.
3      MR. PROSTOK: And Your Honor, if it's acceptable, if
4  things change or -- would it be possible to reach out to the
5  Court and give you a heads up as we get closer to the hearing?
6      THE COURT: Certainly. Certainly.
7      MR. PROSTOK: Okay. Thank you.
8      THE COURT: Yes. If you'll just communicate. Do it
9  on a collective basis --
10     MR. PROSTOK: Sure.
11     THE COURT: -- with all the key folks to my
12 courtroom deputy. But certainly if there's -- one way or the
13 other, if it looks like, from a timing standpoint in
14 particular, we're either going to need a lot more time than we
15 thought or things may be really coming together, certainly
16 we'd appreciate that, because then we, like I said, can
17 appropriately try to orchestrate things on our end to make
18 sure that the staffing is in place to accommodate those needs
19 or to potentially, if we have other things bubbling up that we
20 might need Friday for, for example, that we've got that
21 available for the other matters. Okay?
22     MR. PROSTOK: Certainly, Your Honor.
23     THE COURT: All right. Well, very good.
24     MR. PROSTOK: Thank you.
25     THE COURT: Let me again just thank you all for your

1 efforts.  I really do appreciate it, and I do think it is very
2 important, like I said, for the stability of the case as we
3 appear to be potentially getting to a point of resolution,
4 without making any judgment with respect to that yet.  But
5 just, again, we appear to be at a pretty critical juncture, so
6 I appreciate the efforts.
7      MR. PROSTOK:  Thank you, Your Honor.
8      MR. LIPPMAN:  Thank you, Your Honor.
9      THE COURT:  All right.  That will conclude the
10 matters on this morning's docket.  The Court will be in
11 recess.
12      THE CLERK:  All rise.
13     (Conclusion of proceedings at 9:23 a.m.)
14               --oOo--

20                CERTIFICATE
21    I certify that the foregoing is a correct transcript from
the electronic sound recording of the proceedings in the
22 above-entitled matter.
23   **/s/ Kathy Rehling**                            **04/26/2023**
24 _____      _____
Kathy Rehling, CETD-444                      Date
25 Certified Electronic Court Transcriber

```
                                                                    20

                                   INDEX

    PROCEEDINGS                                                      4

    WITNESSES

    -none-

    EXHIBITS

    -none-

    RULINGS

    Invictus Global Management, LLC's Preliminary Response to
    Debtors' Emergency Motion for Entry of an Order (I) Enforcing
    Obligation to Lend Under Final DIP Order; (II) Compelling
    Turnover of Property of the Estate; and (III) Granting Related
    Relief (936)

    END OF PROCEEDINGS                                              19

    INDEX                                                           20
```